UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 14-61830-CIV-SEITZ

LISA RHEIN and
SAMMY RHEIN,

    Plaintiffs,

v.

ROCHELLE KEVELSON,
TIKVAH LYONS, and
JOYCE GENAUER,

    Defendants.
_____/

## ORDER GRANTING MOTION TO DISMISS AND DISMISSING CASE WITHOUT PREJUDICE

This matter is before the Court on Defendants' motion to dismiss [DE-6]. This case involves $350,000 that the late Ms. Idelle Stern transferred in January 2005 to an account jointly held by Plaintiff Lisa Rhein and her mother, allegedly as a gift towards Plaintiffs' children's education (the "Gift"). On May 6, 2014, the state probate court issued an order requiring Rhein's mother and her family members to return the Gift to Ms. Stern's estate (the "Estate").[1] Pursuant to that order, Defendants, beneficiaries of the Estate, sent Plaintiffs a letter (the "Letter") demanding that they return the Gift to the Estate. Plaintiffs responded by filing this action, which seeks a declaration concerning their liability to Defendants under the claims in the Letter. Defendants now move to dismiss, arguing under various theories that this case belongs in state court.

Having reviewed Defendants' motion to dismiss, Plaintiffs' response [DE-9], Defendants' reply [DE-10], the discussion at the November 25, 2014 hearing, and the relevant portions of the record, the Court will grant Defendants' motion. Plaintiffs

---

[1]     This order was the culmination of extensive litigation between Defendants and Lisa Rhein's parents over Ms. Stern's capacity and estate. The Rheins became involved when they consented to two settlement agreements executed by Lisa Rhein's parents.

submitted to the state court's jurisdiction by consenting to two settlement agreements, and the state court has already ruled that the Gift must be returned to the Estate. And this case is about whether Defendants can demand that Plaintiffs return the Gift to the Estate. But the Estate is not party to this case and cannot be joined, so it would not be bound by any judgment. So if this case went forward in the Estate's absence, it would unwarrantedly interfere with the jurisdiction of a state court already addressing this issue, all for the sake of a judgment that, at best, would not protect Plaintiffs from the Estate raising the same claims in the state court. Therefore, the Estate is a required and indispensable party, and the case must be dismissed for lack of jurisdiction. And for the same reasons, the Court would exercise its discretion to abstain from rendering a declaratory judgment even if it had jurisdiction.

## A. BACKGROUND

Idelle Stern had four daughters: Judy Sugar and Defendants Rochelle Kevelson, Tikvah Lyons, and Joyce Genauer. Plaintiff Lisa Rhein is Judy Sugar's daughter, and Plaintiff Sammy Rhein is Lisa Rhein's husband. According to the Complaint, Ms. Stern made the Gift in January 2005 so that Plaintiffs could pay for their children's religious education. In order to make the Gift, Ms. Stern transferred $350,000 into an account jointly held by Lisa Rhein and Judy Sugar. (Compl. ¶¶ 9–16.)

Beginning in 2010, Defendants brought proceedings in state court against Judy Sugar and her husband Sam Sugar, alleging that they had exerted undue influence over Ms. Stern in order to gain control over her assets. In November 2010, Ms. Stern was adjudicated incapacitated.

Plaintiffs were never made formal parties to any state-court proceedings, but they did consent to be bound by two settlement agreements. First, the Sugars signed a

settlement agreement on February 7, 2011 (the "February Settlement Agreement")[2] in which they agreed (1) that any documents executed by Idelle Stern after 2004 were revoked and of no force or effect and (2) to terminate any ownership interests they might have in any of Idelle Stern's financial accounts. (Def. Ex. B [DE-6 at 54–64].) The February Settlement Agreement stated that it bound Judy Sugar's heirs, which include Plaintiffs. (*Id.* at ¶ 7.) Second, the Sugars signed a settlement agreement on July 18, 2011 (the "July Settlement Agreement") in which they agreed that Judy Sugar would waive a portion of her inheritance and that her heirs would join in this waiver. (Def. Ex. D [DE-6 at 73–77].) Plaintiffs did not sign either settlement agreement directly, but they signed a separate agreement (the "Waiver") which explicitly adopted and incorporated the February Settlement Agreement and July Settlement Agreement and in which they acknowledged being Judy Sugar's heirs. (Def. Ex. G [DE-6 at 85–93].)

After Ms. Stern passed away on July 11, 2013, more litigation ensued. On May 6, 2014, the state court entered an order on cross-motions by Defendants and the Sugars. (Def. Ex. K [DE-6 at 102–11].) In that order, the court declared void an "Instruction to Bank" (Def. Ex. J [DE-6 at 100–01]), purportedly executed by Ms. Stern in January 2005, which authorized a $350,000 disbursement to a "new account in the name of Judy Sugar and Lisa Rhein." The court further noted:

> The distribution may have been made to Lisa Rheins, Judy Sugar's daughter. Judy Sugar's heirs are bound by the February Settlement Agreement pursuant to Paragraph 7 therein. Subsequently, the Settlement Agreements were later agreed to and ratified by Lisa Rheins.

---

[2] Based on the parties' consent at the November 25, 2014 hearing, the Court takes judicial notice of the February Settlement Agreement, the July Settlement Agreement, the Waiver, the "Instruction to Bank," and the state court's May 6, 2014 Order. (Def. Exs. B, D, G, J, K.) *See* Fed. R. Evid. 201.

(Def. Ex. K at 109 n.10.) The court concluded by "reserv[ing] jurisdiction to determine if the Sugars or the Sugars' family members wrongfully removed funds from the Israeli Account that should be returned, including but not limited to, funds received pursuant that certain 'Instruction to Bank.'" (*Id.* at 111.)

Ten days later, on May 16, 2014, Defendants wrote Plaintiffs the Letter, accusing them of knowingly accepting funds wrongfully taken from the Estate and demanding that they return "triple the amount stolen" to the Estate. (Compl. Ex. B [DE-4-2] at 4.) Plaintiffs responded by filing the instant action on August 12, 2014, alleging that any lawsuit threatened by Defendants in the Letter had become time-barred as of August 11, 2014. (Compl. ¶¶ 17, 22.)

## B. DISCUSSION

### 1. Subject Matter Jurisdiction

Defendants argue that the Court lacks jurisdiction because the Estate is a required and indispensable party. If an absent party (1) is required[3], (2) cannot be joined[4], and (3) is indispensable, then the case must be dismissed. *City of Marietta v. CSX Transp., Inc.*, 196 F.3d 1300, 1305 (11th Cir. 1999). Defendants bear the burden of demonstrating that an absent party is required and indispensable. *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1347 (11th Cir. 2011).

An absent party is required if "the court cannot accord complete relief among existing parties" in the nonparty's absence, Fed. R. Civ. P. 19(a)(1)(A), or if "the nonparty's absence will impede either the nonparty's protection of an interest at stake or subject parties to a risk of inconsistent obligations." *City of Marietta*, 196 F.3d at 1305.

---

[3]  The parties use the word "necessary," but Rule 19 uses the word "required."
[4]  This requirement is met because Plaintiffs and the Estate are Florida residents, so joinder of the Estate as a defendant would destroy complete diversity.

An absent required party is indispensable if "in equity and good conscience," the case should not go forward without that party. To determine if a party is indispensable, courts consider "(1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder." Fed. R. Civ. P. 19(b).

Under this standard, the Estate is a required party. The Letter is inartfully drafted insofar as it purports to speak on Defendants' behalf, but the actual relief sought is on behalf of the Estate—it demands that Plaintiffs pay $1.05 million "to the order of BB&T, as curator of" the Estate, not to Defendants directly. (Compl. Ex. B at 4.) Defendants' interests are thus purely derivative of the Estate's interests. But the Estate would not be bound by any judgment in this case. *See Stogniew v. McQueen*, 656 So. 2d 917, 919 (Fla. 1995) (collateral estoppel requires mutuality of parties). So this case is basically pointless—regardless of any relief this Court could grant Plaintiffs, the Estate could simply bring the same claims against Plaintiffs. So the Court cannot "accord complete relief among existing parties" in the Estate's absence. *See City of Marietta*, 196 F.3d at 1305–06 (the district court could not provide complete relief in Georgia's absence because "even if Marietta succeeds in having CSX remove the barriers on Dobbs and Depot Streets . . . [Georgia] could re-erect the barriers without fear of contempt").

The Estate is also indispensable because the state probate court is already dealing with this matter. Plaintiffs consented to the state court's jurisdiction by signing the Waiver, which explicitly adopted and incorporated the February Settlement Agreement and July Settlement Agreement. (Def. Ex. G.) The state court's May 6, 2014 Order (Def. Ex. K), which declared the "Instruction to Bank" void, purported to bind Plaintiffs

precisely on the grounds that they were bound by these settlement agreements. The court also specifically reserved jurisdiction to determine if Plaintiffs wrongfully removed funds pursuant to the "Instruction to Bank." The Estate is obviously party to these state-court probate proceedings.

Accordingly, the Estate would be prejudiced if this case were to go forward in the Estate's absence because this action is so evidently an end-run around the state probate court's May 6, 2014 Order. It is also an ineffectual end-run because a judgment rendered in the Estate's absence would not preclude the Estate from bringing the claims alleged in the Letter, so this Court cannot grant an adequate remedy in the Estate's absence. Finally, Plaintiffs have a fully adequate remedy because they can and should have raised their defenses in the state-court litigation. Therefore the Estate is a required and indispensable party that cannot be joined, and this case must be dismissed.

## 2. Discretion Under the Declaratory Judgment Act

Moreover, even if the Court had jurisdiction, it would exercise its discretion under the Declaratory Judgment Act and decline to entertain this action. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995) ("[D]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act."); *see also Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942). The Eleventh Circuit has enumerated nine factors to guide district courts in exercising this discretion:

> (1) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts;
> (2) whether the judgment in the federal declaratory action would settle the controversy;
> (3) whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue;
> (4) whether the declaratory remedy is being used merely for the purpose of "procedural fencing"—that is, to provide an arena

> for a race for res judicata or to achieve a federal hearing in a case otherwise not removable;
> (5) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction;
> (6) whether there is an alternative remedy that is better or more effective;
> (7) whether the underlying factual issues are important to an informed resolution of the case;
> (8) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
> (9) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1331 (11th Cir. 2005). No one factor is controlling, and district courts have wide discretion in deciding which of these factors is relevant or significant. *See Great Lakes Reinsurance (UK) PLC v. TLU Ltd.*, 298 Fed. Appx. 813, 815 (11th Cir. 2008) (affirming a district court's refusal to assert jurisdiction where the district court never even cited to *Ameritas*). Moreover, contrary to Plaintiffs' contention, there is no requirement in *Ameritas* that the state and federal actions involve the same exact parties—rather, the relevant questions are "whether the judgment in the federal declaratory action would settle the controversy" and "whether there is an alternative remedy that is better or more effective." *Ameritas*, 411 F.3d at 1331.

In this case, each of the relevant factors points against exercising jurisdiction. Most importantly, any ruling by this Court would "improperly encroach on state jurisdiction" because the state court has already explicitly reserved jurisdiction over whether Plaintiffs must return the $350,000 transferred pursuant to the "Instruction to Bank." Given the state court's reservation of jurisdiction over this very issue, this action is necessarily a collateral attack on the state court's order and can serve no purpose

other than "procedural fencing." Moreover, a judgment in this action would neither "settle the controversy" nor "serve a useful purpose in clarifying the legal relations at issue" because a ruling that Defendants are time-barred from demanding that Plaintiffs return the Gift would not preclude the Estate from making the same demand. And therefore, the state-court proceeding can provide "an alternative remedy that is better or more effective." So the second, third, fourth, fifth, and sixth factors strongly support declining to exercise jurisdiction. In contrast, the remaining factors are, at most, neutral. Therefore, "to allow the declaratory action to proceed would amount to the unnecessary and inappropriate gratuitous interference with the more encompassing and currently pending state court action that was contemplated by the Supreme Court in *Brillhart* and *Wilton*." *Ameritas*, 411 F.3d at 1332 (citation omitted).

This Court has the authority to decide "whether to stay or dismiss a declaratory judgment suit in light of pending state proceedings." *Wilton*, 515 U.S. at 286. Because the issue raised in the Complaint will be completely addressed in the state-court action, the Court will dismiss this case without prejudice. *See Artmark Prods. Corp. v. Conbraco Indus.*, 11-20879-CIV, 2012 WL 1155132, at *5 (S.D. Fla. Apr. 5, 2012).

## C. CONCLUSION

Accordingly, it is hereby

ORDERED that

1)   Defendants' motion to dismiss [DE-6] is GRANTED.

2)   This case is DISMISSED WITHOUT PREJUDICE.

3)   This case is CLOSED.

DONE AND ORDERED in Miami, Florida, this 26th day of November, 2014.

_____
PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

- 8 -